**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darrin Langton,<br><br>              Plaintiff,<br><br>v.<br><br>United States Department of Homeland Security,<br><br>              Defendant. | No. CV-20-00099-PHX-JZB<br><br>**ORDER** |

Pending before the Court are Defendant's Motion to Dismiss and Motion for Summary Judgment (doc. 16). For the reasons discussed below, the Motion to Dismiss will be denied as moot and the Motion for Summary Judgment will be granted against Plaintiff Darrin Langton and his claims will be dismissed with prejudice.

**I.    Background.**

On January 14, 2020, Plaintiff filed his complaint in this court. (Doc. 1.) The complaint seeks injunctive relief against the Defendant United States Department of Homeland Security ("DHS") "and its components [sic] Federal Bureau of Investigation ("FBI")."[1] (*Id.* ¶ 1.) Plaintiff alleges he submitted a public records request under the Freedom of Information Act ("FOIA") to DHS and this request was subsequently denied by Defendant, citing exemptions to FOIA. (*Id.* ¶ 7.) DHS's response included the

---

[1] The Court notes that the FBI is not a component of DHS, but rather is part of the United States Department of Justice. U.S. Dep't of Justice Organizational Chart, available at https://www.justice.gov/agencies/chart.

following:

> Your request is denied under exemption 3 pursuant to Title 50 US Code § 3024(i) and 6 U.S.C. § 121(d)(11), which protect intelligence sources and methods from unauthorized disclosure. Additionally, we are neither confirming nor denying the existence of records under exemption 7(E) as disclosure of the information you requested would reveal law enforcement techniques or procedures and the circumstances under which those procedures ore [sic] techniques were used. Also, these records are exempted pursuant to Exemptions 6 and 7(C) of the FOIA, 5 U.S.C. § 552(b)(6) and (b)(7)(C). I&A hereby neither confirms nor denies that such records may or may not exist.

(*Id.*) Plaintiff appealed this denial, the appeal was reviewed by the United States Coast Guard Office of the Chief Administrative Law Judge ("ALJ"), and the ALJ affirmed DHS's response. (*Id.* ¶ 9.) Plaintiff requests the Court order Defendant to disclose the existence or non-existence of Plaintiff's requested records, disclose the records in their entirety to Plaintiff, and award costs and attorney's fees. (*Id.* at 4.)

On April 8, 2020, Defendant filed a Motion for Summary Judgment and a Motion to Dismiss for failure to state a claim. (Doc. 16.) The Motion to Dismiss argues that Plaintiff failed to perfect service under Rule 4 by failing to serve the Attorney General and failing to file the required proof of service. (*Id.* at 11-12.) The Motion for Summary Judgment argues Plaintiff's request falls squarely within the FOIA statutory exemptions and Defendant's response was directly in line with the applicable law. (*Id.* at 7-11.) On April 22, 2020, Plaintiff filed his Response to the Motion to Dismiss stating the parties stipulated to extend the deadline to complete service and Plaintiff had completed service upon the Attorney General. (Doc. 21.) On April 23, 2020, Defendant filed its Reply, agreeing that Plaintiff had perfected service. (Doc. 22.) On May 22, 2020, Plaintiff filed a Response to the motion for summary judgment. (Doc 26.) On June 4, 2020, Defendant filed its Reply. (Doc. 27.)

As the parties agreed, Plaintiff perfected service, thus the basis for the Motion to Dismiss no longer exists and it is moot. (Docs. 18-22). Therefore, the Court will only address the Motion for Summary Judgment.

\

## II. Legal Standard.

The district court has jurisdiction to enjoin an agency from withholding agency records and reviews such matters *de novo*. 5 U.S.C. § 552(a)(4)(B). "Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (citing *Wickwire Gavin, P.C. v. U. S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004)). The Ninth Circuit employs its usual summary judgment standard in FOIA cases. *Id.* Thus, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled as to judgment as a matter of law." Fed. R. Civ. P. 56(a). "District Court decisions in FOIA cases must provide statements of law that are both accurate and sufficiently detailed to establish that the careful de novo review prescribed by Congress has in fact taken place." *Van Bourg, Allen, Weinberg & Roger v. N.L.R.B.*, 656 F.2d 1356, 1358 (9th Cir. 1981) (quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Bell*, 603 F.2d 945, 950 (D.C. Cir. 1979)).

"The FOIA mandates a policy of broad disclosure of government documents when production is properly requested." *Kamman v. U.S. I.R.S.*, 56 F.3d 46, 48 (9th Cir. 1995) (citing 5 U.S.C. § 552(a)). "An agency may withhold a requested document only if it falls within one of nine statutory exemptions to the disclosure requirement." *Id.* (citing 5 U.S.C. § 552(b)). "These exemptions are to be narrowly construed by the courts." *Id.* (citing *Church of Scientology of Cal. v. U.S. Dep't. of the Army,* 611 F.2d 738, 742 (9th Cir. 1979)). Under FOIA, "the burden is on the agency to sustain its action" withholding documents pursuant to an exemption. 5 U.S.C. § 552(a)(4)(B). "Affidavits of agency employees may be used to satisfy this burden." *Kamman*, 56 F.3d at 48 (citing *Lewis v. IRS,* 823 F.2d 375, 378 (9th Cir. 1987)). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "As a general matter, '[a]n affidavit from an

agency employee responsible for supervising a FOIA search is all that is needed to satisfy' the personal knowledge requirement of Federal Rule of Civil Procedure 56." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 990 (9th Cir. 2009) (quoting *Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 814 (2d Cir. 1994)). Summary judgment is warranted "on the basis of agency affidavits when the affidavits describe 'the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"). *Wolf v. C.I.A.*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

### III. FOIA Exemption and *Glomar* Responses.

Under FOIA Exemption 3, FOIA's disclosure requirements do not apply to matters that are

> (3) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute—
>
> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3). "Exemption 3 does not itself provide the standards for an exemption from disclosure but instead incorporates other applicable statutory exemptions." *Civil Beat Law Ctr. for the Pub. Interest, Inc. v. Ctrs. for Disease Control & Prevention*, 929 F.3d 1079, 1084 (9th Cir. 2019). In determining whether withholding under Exemption 3 is proper, "[f]irst, we determine whether the withholding statute meets the requirements of Exemption 3. Then, we determine whether the requested information falls within the scope of the withholding statute." *Id.* (quoting *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007)).

In response to a records request, an agency may "provide a *Glomar* response, 'refus[ing] to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception.'" *Pickard v. Dep't of Justice*, 653

F.3d 782, 786 (9th Cir. 2011) (quoting *Wolf*, 473 F.3d at 374). "When the Agency's position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits which explain the Agency's refusal." *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 774 (9th Cir. 2015) (quoting *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009)).

**IV.    Analysis.**

The material facts in this case are not in dispute. On May 2, 2019, Plaintiff submitted a FOIA request to Defendant requesting records on himself. (Doc. 17 ¶ 7; Smislova Aff. ¶ 9, Attach. A; Doc. 25, at 1.)[2] Plaintiff's request also included a comment asking, "Am I being harassed by your department?" (*Id.*) On May 13, 2019, the Office of Intelligence and Analysis ("I&A") at DHS issued its final response citing FOIA Exemption 3 pursuant to 50 U.S.C. § 3024(i) and 6 U.S.C. § 121(d)(9)[3], "which protect intelligence sources and methods from unauthorized disclosure." (Doc. 17, ¶ 9; Smislova Aff. ¶ 10, Attach. B; Doc. 25, at 1.) As a result, I&A issued a *Glomar* response stating: "I&A hereby neither confirms nor denies that such records may or may not exist." (Smislova Aff. Attach. B; Doc. 25, at 1). On June 5, 2019, Plaintiff appealed this decision, and on September 16, 2019, the ALJ affirmed I&A's *Glomar* response. (Doc. 17, ¶¶ 11-12, Smislova Aff. Attachs. C-D; Doc. 25, at 1.)

**A. The National Security Act and the Homeland Security Meet the Requirements of Exemption 3.**

Defendant cited to two withholding statutes in its *Glomar* response. The first is Section 102(A)(i)(1) of the National Security Act of 1947, as amended by the Intelligence

---

[2] Docket 17 Exhibit 1 is a certified declaration by Melissa Smislova, Deputy Under Secretary for Intelligence Enterprise Readiness and Acting FOIA Officer, I&A, DHS. Ms. Smislova certifies she has direct oversight of FOIA policies, procedures, and litigation involving DHS I&A records. (Doc. 17, Ex. 1, at 1) (hereinafter, "Smislova Aff.").

[3] In its response, I&A cites to 6 U.S.C. § 121(d)(11). In her affidavit, Ms. Smislova explains that the Homeland Security Act was amended and the text of 6 U.S.C. § 121(d)(11) did not change, but was moved to 6 U.S.C. § 121(d)(9), and I&A had not yet updated its FOIA Exemption documentation to reflect the change. Smislova Aff. n.1.

Reform and Terrorist Prevention Act of 2004, codified at 50 U.S.C. § 3024(i). The National Security Act of 1947 is recognized as a withholding statute under Exemption 3. *See CIA v. Sims*, 471 U.S. 159, 167 (1985); *Hunt v. CIA,* 981 F.2d 1116, 1118 (9th Cir. 1992); *DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015); *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 384 F. Supp. 3d 19, 30 (D.D.C.), *reconsideration denied*, 401 F. Supp. 3d 187 (D.D.C. 2019); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 501 (S.D.N.Y. 2010). The statute states: "The Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i). "The DNI has delegated enforcement of this National Security Act mandate to the heads of the 17 agencies that constitute the "Intelligence Community[,]" *see* Intelligence Community Directive 700, at 3 (June 7, 2012), available at http://www.dni.gov/files/documents/ICD/ICD_700.pdf." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 296 F. Supp. 3d 109, 121 (D.D.C. 2017). I&A is one of the 17 agencies of the Intelligence Community. *See* Dir. of Nat'l Intelligence, Members of the IC, https://www.dni.gov/index.php/what-we-do/members-of-the-ic#dhs.

The second statute relied on by I&A is the Homeland Security Act, 6 U.S.C. § 121(d)(9), which is a statute specific to DHS and reflects the I&A's undertaking of the responsibilities delegated to the agency head by the Director of National Intelligence. The statute provides that the Under Secretary for Intelligence and Analysis shall be responsible to ensure that "any intelligence information under this chapter is shared, retained, and disseminated consistent with the authority of the Director of National Intelligence to protect intelligence sources and methods under the National Security Act of 1947 and related procedures." 6 U.S.C. § 121(d)(9)(B). *See Brennan Ctr. for Justice at New York Univ. Sch. of Law v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 88 (S.D.N.Y. 2018) ("Plaintiff does not appear to dispute that the Homeland Security Act qualifies as a withholding statute under Exemption 3, and with good reason—on its face, the Homeland Security Act specifically exempts 'intelligence sources and methods' from disclosure.") (citing *Zanoni v. U.S. Dep't of Agric.*, 605 F.Supp.2d 230, 236 (D.D.C. 2009)). Thus, these statutes meet the requirements of a withholding statute under Exemption 3.

"Where the government invokes FOIA exemptions in cases involving national security issues, we are 'required to accord "substantial weight" to [the agency's] affidavits.'" *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 769 (9th Cir. 2015) (quoting *Hunt v. CIA,* 981 F.2d 1116, 1119 (9th Cir. 1992)). The court must remain "mindful of [its] limited institutional expertise on intelligence matters, as compared to the executive branch" and that "it is in the nature of intelligence data" that "disclosure of small pieces of a puzzle may be aggregated and considered in context by an adversary, giving some risk even to explication of grounds for withholding documents." *Id.* at 770. The National Security Act confers "very broad authority to protect all sources of intelligence information from disclosure," and "[b]ecause of this 'sweeping power,'" the court must give "great deference" to an agency's "assertion that a particular disclosure could reveal intelligence sources or methods." *Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) (quoting *Sims*, 471 U.S. at 168-9, 179) (internal citations omitted); *see also Minier v. CIA*, 88 F.3d 796, 801 (9th Cir. 1996) (holding the "near-blanket" FOIA exemption to protect sources and methods "authorizes the CIA's refusal to confirm or deny the existence of an employment relationship between itself and [an individual].")[4]

### B. A *Glomar* Response Was Proper.

The information Plaintiff requested falls within the scope of the National Security Act's mandate and is exempted under Exemption 3 to FOIA. The National Security Act directs the Director of National intelligence to "protect intelligence sources and methods

---

[4] Plaintiff argues that Ms. Smislova's affidavit is too conclusory and is insufficient to meet the burden required to prove exemption. (Doc. 21, at 6-8.) The cases Plaintiff cites to are inapposite, as they all deal with cases that fall under exemption 7, which allows for an agency to withhold records "compiled for law enforcement purposes." 5 U.S.C.A. § 552(b)(7). Plaintiff only addresses I&A's *Glomar* response under exemption 7. Each exemption, however, is evaluated separately and a single exemption is valid to support withholding. *See Berman v. CIA*, 501 F.3d 1136, 1140 n.2 (9th Cir. 2007) ("Because we hold that the PDBs are protected under exemption 3, we do not decide whether the CIA's claims that they are also protected under exemption 1 and exemption 5 are valid."); *Painting Indus. of Hawaii Mkt. Recovery Fund v. U.S. Dep't of Air Force*, 26 F.3d 1479, 1486 (9th Cir. 1994) ("Because we hold that Exemption 6 justifies the government's action in providing redacted copies of certified payroll records requested by the labor organizations, we need not reach the Exemption 7(C) issue."). Because the Court finds that the withholding is valid under exemption 3, it is irrelevant whether exemption 7 applies to this information, and the Court need not address it.

from unauthorized disclosure," 50 U.S.C. § 3024(i); this authority was delegated to the Under Secretary for Intelligence and Analysis and is required by the Homeland Security Act. The "broad sweep of this statutory language" is intentional by Congress and is not limited to only confidential or nonpublic intelligence sources. *See Sims*, 471 U.S. at 169-70. The exemption applies to both foreign or domestic intelligence sources and methods. *See Sims*, 471 U.S. at 171 (discussing the extraordinary diversity of intelligence sources and that "Americans of all types and descriptions who travel around the world are one of the greatest repositories of intelligence that we have"); *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990) ("[E]xemption 3 extends to all intelligence sources, domestic and as well as foreign, the District Court's order requiring disclosure of CIA contacts with domestic sources, agencies and officials is reversed.").

Plaintiff asked DHS for any records collected regarding himself. The Ninth Circuit has upheld *Glomar* responses in similar situations regarding the protection of intelligence sources and methods with regard to information on individuals. In *Hunt v. CIA*, examining a *Glomar* response to a request for records on a foreign national under the National Security Act, the Ninth Circuit held that the director of the CIA had "extensive power" to protect intelligence sources and methods and as such, the case law under Exemption 3 was "only a short step from exempting all CIA records." 981 F.2d at 1120. The affidavits in that case give similar reasoning to the affidavit in this case: if the CIA were to disclose "the existence or non-existence of records on particular individuals, a FOIA requester could make the information public or otherwise available to counter-intelligence operations from other nations." *Id.* at 1119. Those counterintelligence operatives "could then determine the contours and gaps of CIA intelligence operations and make informed judgments as to the identities of probable sources and targets in other countries." *Id.* The court noted that the use of a *Glomar* response must be viewed in the total context of intelligence-gathering. *Id.* at 1119 ("The CIA affidavits stress that the disclosure of the existence or non-existence of documents must not be viewed in isolation but rather as one tile in a mosaic of intelligence

gathering.").[5]

Similarly, here, Ms. Smislova's affidavit declares that I&A's revelation of whether or not it has gathered intelligence on a certain individual may indicate to other potential targets "how I&A and the Intelligence Community are allocating their resources," (doc. 17-1 at 11 (Smislova Aff. ¶ 21)), and may provide these other targets with the abilities to frustrate I&A's intelligence-gathering purposes. Therefore, it is I&A's policy to issue *Glomar* responses to any requests for intelligence records on an individual. (*Id.* at 9-10 (Smislova Aff. ¶ 19).) In order to ensure consistent responses to these type of requests, I&A must use the *Glomar* response even in instances where no such records exist because to do otherwise would result in an inadvertent admission of records. *Id.* Ms. Smislova's affidavit explains: "If I&A were to admit to a FOIA requestor that it possesses intelligence information about a particular individual of interest, then I&A would essentially be alerting the individual (along with their associates) that I&A and the Intelligence Community have gathered information on the individual and that I&A or the Intelligence Community methods have been applied against the individual." *Id.* With regard to Plaintiff's request, I&A holds that it falls into the "narrow" category of documents where any acknowledgement of the existence or non-existence of this intelligence information, "would reveal whether the Plaintiff was a target of intelligence collection by I&A which in itself would reveal I&A's intelligence sources and methods." *Id.* ¶ 20.

I&A's reasoning is logical and plausible. I&A makes a distinction between records

---

[5] The Ninth Circuit adopted the analysis of the supporting affidavits used by the District of Columbia Circuit. *See Hunt*, 981 F.2d at 1119-20 (discussing *Gardels v. CIA,* 689 F.2d 1100 (D.C. Cir. 1982); *Miller v. Casey*, 730 F.2d 773 (D.C. Cir. 1984)). In *Gardels*, the Circuit Court upheld the use of a *Glomar* response where disclosure whether the CIA had certain contacts at a specific university might "trigger the danger that foreign intelligence agencies could (and would) discover who those covert contacts were," the foreign agency "could try to prevent its nationals from going to that university," and the foreign agency "also would try to determine what research areas or subjects interested the CIA." 689 F.2d at 1104. Conversely, denying the existence of any covert contacts would make "the work of foreign intelligence bodies . . . much easier; they could and would concentrate their efforts on the remaining American colleges and universities, and their sphere of activity could be appreciably narrowed." *Id.*; *see also Miller*, 730 F.2d at 778 ("Again, the courts are obliged to accord substantial weight to the agency affidavit. An official confirmation that the CIA participated in the covert action would reveal how the CIA has deployed its resources in the past, and would deter potential future sources from cooperating.")

regarding an individual and records regarding information on a particular topic or subject. With an individual, the confirmation or denial of the existence of records could be used by other "similarly situated individuals" to engage in countermeasures to "identify and frustrate" the intelligence activities of the agency or, conversely, to emulate a "successful pattern of undetectable activities with similar results." *Id.* ¶¶ 20-21. The policy considerations make sense given that the revelation of particular targets of interest would indicate to other potential targets "how I&A and the Intelligence Community are allocating their resources." *Id.* ¶ 21. The usual FOIA request regarding a certain subject matter is different, however, because I&A only searches and provides non-exempt records or non-exempt portions of records, and "the fact that I&A possesses or does not possess records is not itself harmful to intelligence sources and methods." *Id.* ¶ 22. *See also Wolf v. CIA*, 473 F.3d 370, 377-78 (D.C. Cir. 2007) (finding CIA's declaration that confirmation or denial of the existence of records on a foreign national would implicate intelligence sources and methods under Exemption 3); *see also Bothwell v. CIA*, 2014 WL 5077186, at *11 (N.D. Cal. Oct. 9, 2014) (finding the CIA's declaration thoroughly discussed the reasoning behind a *Glomar* response to a request related to individuals connected to the assassinations of President John F. Kennedy and Senator Robert F. Kennedy); *Willis v. Nat'l Sec. Agency*, 2019 WL 1924249, at *8-9 (D.D.C. Apr. 30, 2019) (finding NSA's declaration logical and plausible that the disclosure of whether the agency had intelligence files pertaining to an individual would reveal NSA intelligence sources and methods); *Wheeler v. C.I.A.*, 271 F. Supp. 2d 132, 136, 141 (D.D.C. 2003) (finding CIA's declaration that "[p]erson-specific information is neither confirmed nor denied" by the agency unless there has already been a public acknowledgement of the connection as appropriate under Exemption 3).

Thus, the information requested by Plaintiff falls within the scope of Exemption 3 of FOIA given the Director of National Intelligence's, and by proxy, the Under Secretary of Intelligence and Analysis at DHS, broad authority to protect intelligence sources and methods under the National Security Act. 50 U.S.C. § 3024(i); 6 U.S.C. § 121(d)(9)(B). By revealing whether I&A has gathered intelligence on Plaintiff, the agency may be

inadvertently revealing its intelligence sources or methods. As explained in Ms. Smislova's affidavit, the confirmation or the denial of the existence of records on Plaintiff could be used by those seeking to exploit this information in actions against the United States. Plaintiff does not respond to the claims regarding Exemption 3, nor does Plaintiff does not allege any contrary evidence or bad faith on the part of the government. (Doc. 21.) Therefore, the Court concludes a *Glomar* response was proper and these records are exempt from FOIA disclosure under Exemption 3 pursuant to the National Security Act.

### V.     Conclusion.

The Court will grant Defendant's motion for summary judgment (doc. 16) because, in giving substantial weight to Defendant's supporting affidavit, the Court concludes that the information Plaintiff requests falls under Exemption 3 to FOIA. The Defendant's *Glomar* response was proper given that the very disclosure of the existence or non-existence of any information on Plaintiff would inherently violate the Under Secretary's duty under the National Security Act and the Homeland Security Act. Defendant's motion to dismiss (doc. 16) is denied as moot as Plaintiff did perfect service.

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (doc. 16) is **granted**.

2. Defendant's Motion to Dismiss is **denied as moot**.

3. The Clerk is ordered to enter judgment against Plaintiff and terminate this action.

Dated this 11th day of August, 2020.

Honorable John Z. Boyle
United States Magistrate Judge